**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

David E. Geiger,

    Plaintiff,

    v.                                       Case No.  1:07cv241

Kroger Company, Inc.,                      Judge Michael R. Barrett

    Defendant.

**OPINION AND ORDER**

This matter is before the Court upon Defendant The Kroger Company's Motion for Summary Judgment.  (Doc. 24)  Plaintiff has filed Memorandum in Opposition (Doc. 29), and Defendants have filed a Reply (Doc. 33).

**I.    FACTUAL BACKGROUND**

Plaintiff was born in 1950, and began working for The Kroger Company in 1968 as a clerk.  (Doc.15, David Geiger Depo. at 31)  In 1997, Plaintiff became the manager of the store in Findlay, Ohio.  (Id. at 32-33)  Plaintiff received several "very satisfactory" performance evaluations as manager.  (Doc.16, Vince Trovato Depo., Exs. 2, 4)

At Kroger, store managers are responsible for controlling "shrink."  (Geiger Dep. at 54)  "Shrink" describes a profit loss caused by items which are in the inventory of the store, but are not sold.  (Id. at 51)  To reduce shrink, Kroger discounts the price of damaged, out of season, out of date, or excess items.  (Trovato Depo. at 28-29; Geiger Depo. at 54)  Store managers have some discretion in marking down non-seasonal items.  (Trovato Depo. at 31-32)  Store managers, or their department heads, mark down these items incrementally until the items begin to sell.  (Id. at 32)  However, Kroger policy does not

recommended marking down items below fifty percent of the item's retail price. (Doc. 20, Kirk Ernst Depo. at 53) Kroger policy also states that the maximum possible reduction is one-third the cost to Kroger, plus one cent. (Id.) As to seasonal items, Kroger's marketing department identifies seasonal items which are to be discounted, sets a date on which such items are to be reduced, and sets the amount of the reduction. (Trovato Depo. at 30)

Store managers can use financial cost billing ("FCB") coupons to mark down items. (Tovato Depo. at 35) FCB coupons are scannable, pre-printed stickers in amounts up to three dollars. (Geiger Depo. at 88) FCB coupons are to be kept in a secure location, since they are essentially equivalent to cash. (Id. at 92) Store managers are permitted to use FCB coupons on seasonal items discounted by the marketing department. (Id. at 86-87, 88, 107) The parties dispute whether under Kroger's policies a store manager is permitted to affix more than one FCB coupon to an item. For example, affixing three $3 coupons to an item for a total reduction of $9.

Store managers and employees were permitted to purchase marked down items if they have been offered to the public first. Kroger's store rules provide: "Employees may purchase marked down merchandise only if has been previously offered to the general public at the same price." (Geiger Depo., Ex. 2) However, the parties dispute how long a marked down item must be on the sales floor before an employee can purchase the item. The parties also disagree as to whether merchandise "has been previously offered to the general public" if the employee purchases an item which is not on the sales floor, but other identical items are available for purchase on the sales floor.[1]

---

[1]For example, one employee, Alicia Wilson, testified that she purchased marked down items stored in the store office, but the same marked down items were available on the sales floor. (Doc. 18, Paula Race Depo. at 153-54)

Kroger's store rules also provide that employees may not "reduce in price or check out any merchandise that is knowingly for his/own [sic] use or that of any relative or resident in his/her household." (Id.) The parties have different interpretations of this rule as well. Plaintiff contends that an employee could purchase the item unless there was proof that the employee reduced the item and intended to personally use the item or give it to a family member or member of his or her household. (Id. at 131-32, 134)

When items are being purchased at a cash register, the preference is for items to be scanned, rather than hand-rung, because scanning allows the item to be identified and have the proper cost attached to it. (Ernst Depo. at 59) However, Kroger admits that it has no policy prohibiting hand-rung items.

In September of 2005, during a routine review of store transactions, it was discovered that Plaintiff's store had a high number of sales where items had been marked down more than fifty percent of the retail price by using FCB coupons. (Doc. 24-2, Race Decl. ¶ 4) Kroger's loss prevention department investigated the transactions further, and discovered that store employee Debra Ward's "Kroger Plus Card" was involved in a high number of transactions. (Doc. 23, Brian Zweibel Depo. at 18) An investigator went to Plaintiff's store and met with Plaintiff. (Id. at 22-23) Plaintiff told the investigator that he was aware of Ward's use of the multiple FCB coupons, and that he had used the FCB coupons similarly. (Id. at 23)

Another investigator reviewed the transactions at Plaintiff's store in more detail and found that from January to September 2005, Plaintiff had made approximately eight purchases which were considered suspicious. (Doc. 18, Paula Race Depo., Ex. 4) The transactions were as follows:

>(1) On January 2, 2005, Plaintiff used $16 worth of FCB coupons and purchased Hanes products at a price lower than what the Kroger marketing department had set; a search revealed that only Plaintiff and other employees purchased these products at this price;
>
>(2) On February 8, 2005, Plaintiff made a twenty-cent purchase which was hand-rung;
>
>(3) On May 2, 2005, Plaintiff used $4 worth of FCB coupons, possibly making a "Mini Press Light" and "Easy Read Tape" free;
>
>(4) On June 2, 2005, Plaintiff purchased five bottles of Prestone antifreeze using fifteen $3 FCB coupons; no other bottles of antifreeze were purchased at this price;
>
>(5) On July 19, 2005, Plaintiff made a purchase where there was a $20 hand-rung item and a $40 hand-rung store coupon;
>
>(6) On August 4, 2005, Plaintiff purchased two lanterns which the marketing department had marked down from $39.99 to $19.99; Plaintiff also used $12 worth of FCB coupons, which lowered the price of each lantern to $7.99; Plaintiff also purchased 2 items described as "Hayes Sngl Shp Hk" which were reduced to $6.49, and Plaintiff used FCB coupons to reduce the price further to $3.49;
>
>(7) On August 5, 2005, Plaintiff purchased an item which was hand-rung for $4.99 and used a $2 FCB coupon to reduce the price of that item;
>
>(8) On September 1, 2005, Plaintiff purchased five Pepsi fridge packs and a hand-rung sale; however, the transaction was cash tendered out and refunded.

(Id.)

The investigation also revealed that six hourly employees–Debra Ward, Linda Nelson, Connie Rayle, Alathea Miler, Alicia Wilson, and John Cicel–had also purchased deeply discounted items. (Doc. 17, Michael Poling Depo. at 52) The investigator reported this information to Paula Race, Kroger's Human Resource Manager. (Race Depo. at 33-35) Race met with Plaintiff and his supervisor to discuss the transactions. (Id. at 32-38) Plaintiff explained that the large number of marked down items was due to a flood in the

store in late July of 2005. (Id. at 53-54) Race rejected this explanation because several of Plaintiff's purchases were made before the flood occurred. (Id. at 150) Plaintiff also maintained that he could not be responsible if employees bought marked down items before customers. (Id. at 53-54) When asked about the antifreeze purchase, Plaintiff explained that the markdowns were made because the labels had faded while being displayed outside. (Id. at 78) Race suspended Plaintiff pending the outcome of the investigation. (Id. at 86)

As part of the investigation, an investigator interviewed the six hourly employees implicated in the investigation. The investigator found that Plaintiff had failed to properly secure FCB coupons; employees were holding items back for later purchase; employees were purchasing discounted items before the public had an opportunity to purchase them; and purchases were routinely made using hand-rung prices or multiple FCB coupons. (Race Depo. at 131-32) This information was provided to Race in a memorandum. (Doc. 19, Steven Shepard Depo. at 36) Plaintiff's co-manager, Gary From, who was born in 1959, was not interviewed. (Race Depo. at 88-89)

Race determined that given his position as Store Manager, his failure to lead by example, abuse of discretion, and his apparent violation of rules and policies, Plaintiff should be terminated. (Race Depo. at 133) Race met again with Plaintiff and presented him with the information provided by the hourly employees. (Id. at 118, 164) Plaintiff was unable to explain what the employees reported. (Id.) Race made a recommendation to Gary Raymond, Vice President of Operations, that Plaintiff's employment be terminated, and Raymond agreed with the recommendation. (Race Depo. at 118-119) Kroger terminated Plaintiff's employment by letter dated October 3, 2005. (Geiger Depo., Ex. 6)

None of the hourly employees identified in the investigation were terminated. (Race Depo. at 90)

Plaintiff was fifty-four years old at the time of his termination. Kroger transferred 33 year-old Krista Sharp from another store to fill Plaintiff's position. (Ernst Depo. at 27-28)

Plaintiff has brought claims of age discrimination under Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"); promissory estoppel under Ohio law; and violation of Ohio public policy.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B. ADEA

The Age Discrimination in Employment Act ("ADEA") prohibits employers from

discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).

Plaintiff states that he has no direct evidence that Kroger discriminated against him. Where no direct evidence of discrimination exists, the burden-shifting framework announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) has been applied to claims brought under the ADEA.  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

To establish a *prima facie* case of age discrimination, a plaintiff must show that: (1) he or she is a member of the protected class, that is, he or she is at least forty years of age; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was treated differently from similarly situated employees outside the protected class, or he or she was replaced by a substantially younger employee.  *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action.  *Manzer*

*v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

### 1. *Prima facie* case of discrimination

The parties dispute whether Plaintiff can establish the fourth prong of the *prima facie* case: whether he was treated differently from similarly situated employees outside the protected class, or he was replaced by a substantially younger employee.

Plaintiff maintains that he was replaced by Krista Sharp, who was thirty-three years old at the time. Kroger does not dispute that Sharp replaced Plaintiff. Instead, Kroger argues that Sharp's age does not raise an inference of discrimination because the decision to transfer Sharp into Plaintiff's position was made by Raymond as Vice President of Operations, and was not made by Race, who made the decision to terminate Plaintiff's employment. However, Race testified that she recommended termination to Raymond, who agreed with the recommendation. Therefore, the decision to fire Plaintiff and hire Sharp into his position were not made by separate decision makers. The Court concludes that Plaintiff has established a *prima facie* case of age discrimination. *See White v. Baxter Healthcare Corp.*, 2008 WL 2607893, *7 (6th Cir. July 3, 2008) (slip op.) (explaining that under the *McDonnell Douglas* framework, the plaintiff bears the initial "not onerous" burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence), *citing Burdine*, 450 U.S. at 253.

### 2. Pretext

Kroger states that it terminated Plaintiff's employment for violating its rules on employee purchases and pricing; and for permitting his employees to violate the rules.

Kroger argues that while Plaintiff may dispute the accuracy of the information Race relied upon in making the decision to terminate him, Race had an "honest belief" that Plaintiff had violated Kroger's rules.

The Sixth Circuit has explained that a plaintiff must allege more than a dispute over the facts upon which his discharge was based. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Instead, a plaintiff must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action. *Id.* In order to determine whether the defendant had an "honest belief," a court must consider whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *Id.* A court must "not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith v. Chrysler*, 55 F.3d 799, 807 (6th Cir. 1998). Instead, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.*

Plaintiff responds that Race's investigation was so "ridden with error" that Race could not honestly have relied upon it in making her recommendation to terminate Plaintiff's employment. *See In re Lewis*, 845 F.2d 624, 633 (6th Cir.1988) ("Sears does not have to establish that the basis on which it acted in firing Lewis was *sound*; rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.").

First, Plaintiff points out that in her deposition, Race was unable to identify who in the Loss Prevention Department had prepared the memo she relied upon in making her

termination recommendation. (Race Depo. at 99-100)[2] The Court notes that even though Race was unable to identify the author of the memo outlining the suspicious purchases made by Plaintiff, Race testified that she went over the information in the memo with Steve Shepard or Larry Hunter, who were supervisors in the Loss Prevention Department and were handling the investigation. (Race Depo. at 101; Zweibel Depo. at 33) As such, the Court finds that there is no genuine issue as to whether it was reasonable for Race to rely upon the information in the memo.

Next, Plaintiff argues that there is a genuine issue as to whether the purchases outlined in the memo are in fact a violation of Kroger's rules. Plaintiff points out that even with the use of $16 worth of FCB coupons, the Hanes products he purchased were not reduced below one-third of the cost to Kroger. Plaintiff argues that there is no policy prohibiting the use of multiple FCB coupons. However, Race testified that she understood the policy regarding FCB coupons to be that only one coupon could be used per item. (Race Depo. at 71) While there is testimony in the record that another manager used had used multiple FCB coupons on occasion (Ernst Depo. at 61), Race testified that in the course of her investigation she verified the one-coupon policy with the finance department who handles the FCB policies. (Race Depo. at 71) There is nothing in the record showing that Race was given contrary information. While Plaintiff may have a different interpretation of the FCP policy and its application, this Court must not second guess the business judgment of the employer, but simply evaluate "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th

---

[2]This memo is attached as an exhibit to both Plaintiff's and Race's deposition. It outlines the purchases which the Loss Prevention Department uncovered in its investigation and determined were suspicious.

Cir. 2004). The Court finds that there is nothing in the record which would suggest that Race did not honestly believe Plaintiff's purchases involving multiple FCB coupons were in violation of Kroger's policies.[3]

Similarly, Plaintiff argues that there is no policy on the amount of time a marked down item must be made available to the public before an employee purchases that item. Plaintiff also points out that there was no investigation into how long the marked down Hanes products he purchased had been on shelf, or if there were more of the marked down products still on the shelves when Plaintiff made his purchase. Plaintiff applies the same argument to his purchases of the five bottles of antifreeze, the lanterns, the "Hayes Sngl Shp Hk" product, the "Mini Press Light" and "Easy Read Tape."

Based on her investigation, Race concluded that Plaintiff purchased these items in violation of Kroger's policy that marked down items must be offered to the general public before being purchased by employees. Race was provided information from the investigators in Loss Prevention which showed that Plaintiff was the only person who purchased these items at those prices. This data was bolstered by the information provided by the store employees who told investigators that employees were holding items back for later purchase; and employees were purchasing discounted items before the public had an opportunity to purchase them. The Court finds that Race reasonably relied on this information to conclude that Plaintiff had violated the policy. In doing so, the Court rejects Plaintiff's argument that Race was required to determine how long the marked down products were on the shelf, or if more of the marked down products remained. This Court

---

[3]Plaintiff argues that he was targeted in the investigation. However, the Court notes that it was not Plaintiff's activity which initiated the investigation, but was the activity of his subordinate, Debra Ward and his subsequent admissions regarding the use of multiple FCB coupons.

may not require that an employer "leave no stone unturned." Moreover, while Race's inference that Plaintiff purchased these items before they were offered to the public may ultimately be wrong, the Court finds that it was reasonable.[4]

Plaintiff also argues that his purchase of a $20 hand-rung item with a $40 hand-rung store coupon and his purchase of a $4.99 hand-rung item with a FCB coupon did not violate any policies because there is no prohibition on hand ringing items and discounts. In addition, Plaintiff explains that the twenty cent hand-rung deli item was proper because employees were permitted to purchase items from the deli for lunch. In response, Kroger admits that there is no policy prohibiting hand ringing items and discounts. However, when an item is hand-rung, the item is not identified by the cash register system, and the proper cost cannot be assigned to the item. In other words, there is no clear record of the transaction, and there is an opportunity to assign a cost to the item other than that

---

[4]As Race explained in her deposition:

Q. My question to you was: Did the store policy define when a reasonable amount of time was for a marked-down product to be offered to the general public?

A. No.

Q. Now, was there anything in your research to examine whether, of those products that only employees bought, were any items like that left in the store that customers just chose not to buy?

A. In other words, if there were 10 items and eight were purchased by employees, what happened to the other two?

Q. Right.

A. No.

Q. Don't you think that would be important to look at?

A. I can't imagine two items just sitting there for infinity and never being purchased by anyone or being thrown out. It just doesn't make sense to me.

(Race Depo. at 65-66)

assigned to it in the system. The Court finds that it was reasonable for Race to view hand-rung transactions as suspicious because by their very nature, hand-rung transactions obscure information which is necessary to determine at a later date whether the purchase was proper. In addition, hand ringing makes it possible for an employee to improperly discount an item.

As to the statements from the hourly employees, Plaintiff argues that these statements are hearsay. Plaintiff also disputes the truth of the statements. Kroger responds that the statements were not being offered for the truth of the matter asserted and thus were not hearsay as that term is defined in Rule 801(c) of the Federal Rules of Evidence. The Court finds that the statements are admissible as evidence of Race's "honest belief" that Plaintiff was permitting his employees to violate Kroger's rules. As the Sixth Circuit has explained, hearsay witness statements in an investigative report may be considered on summary judgment, "not to prove their truth, . . . but to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007), *quoting Haughton v. Orchid Automation*, 2006 WL 3368793, *7 (6th Cir. 2006), *cert. denied*, 128 S.Ct. 1657 (2008). As to the veracity of the statements, the Court notes that Race was presented with the statements of six employees, all of whom told the same or similar stories. There is nothing about the employee's statements themselves, or the manner in which the information was gathered from the employees which, in the Court's view, would signal to

Race that the statements were untrue.[5] Therefore, the Court finds that Race's reliance on the hourly employees' was reasonable.

Finally, Plaintiff questions the credibility of Race because Race testified that she was told that the FCB coupons were upstairs in Plaintiff's office and available to anyone who walked up there. (Race Depo. at 74, 75) However, it was revealed in Race's deposition that Plaintiff's store did not have an upstairs. (Id. at 75-76) Plaintiff also points out that Race never personally observed where the FCB coupons were kept in his store. (Id. at 76) The Court finds that it was reasonable for Race to rely on the information that investigator provided to her: that the FCB coupons were kept "upstairs." Moreover, it is inconsequential whether Plaintiff's store had an upstairs. While it does demonstrate that Race was not personally familiar with Plaintiff's store or the manner in which the FCB coupons were stored, it was reasonable for Race to rely on the information she gathered during the course of the investigation about the FCB coupons. Plaintiff must allege more than a dispute over the facts upon which his termination was based. *Braithwaite*, 258 F.3d at 494.

Based on the foregoing, the Court concludes that Kroger made a reasonably informed and considered decision before it terminated Plaintiff's employment. Accordingly, the Court finds that Plaintiff has not shown that the legitimate reasons put forth by Kroger for Plaintiff's termination were not its true reasons but were a mere pretext for

---

[5] Plaintiff argues that the credibility of John Cecil should be questioned because he was the only hourly employee who was not suspended pending the completion of the investigation. However, there is nothing in the record indicating that Cecil knew when he was being questioned whether he would be suspended or not, or that he was promised anything in exchange for providing information. Moreover, there is nothing in the record indicating that Race had reason to disbelieve the information he provided during the investigation.

discrimination. Therefore, Kroger is entitled to summary judgment on Plaintiff's claim under the ADEA.

### C. Violation of Ohio public policy

Plaintiff does not oppose summary judgment on this claim. Therefore, Kroger is entitled to summary judgment on Plaintiff's public policy claim.

### D. Promissory Estoppel

Plaintiff does not oppose summary judgment on this claim. Therefore, Kroger is entitled to summary judgment on Plaintiff's promissory estoppel claim.

### III. CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 24) is hereby **GRANTED**. This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                        */s/ Michael R. Barrett*
                                    Michael R. Barrett, Judge
                                    United States District Court